■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v DAVID LEMUS, Respondent.—Order of the Supreme Court, New York County (Jay Gold, J.), entered on May 15, 1991, which dismissed counts one, three, four and five of the indictment against defendant, is unanimously reversed on the law to the extent appealed from and counts one, three, four and five reinstated.

In the early morning of November 23, 1990, defendant and a large number of his friends were visiting The Palladium, a nightclub on East 14th Street in Manhattan. As defendant departed the premises at about 1:30 A.M., he got into an altercation with one of the bouncers, Fritz Vincent, concerning the establishment's policy of denying free readmission to any patron who had left. A heavyset friend of defendant intervened on his behalf, demanding an apology, but defendant had gone. Defendant was eventually followed out by the heavyset man, as well as other friends and associates. Shortly thereafter, the heavyset man returned to the club's entrance with two other companions, who remained at various points behind the guard ropes, and they spoke to the group of five bouncers, suggesting that an apology was indicated. Defendant thereupon ran toward the bouncers, two of whom attempted to block his path. He reached into his waist band and took out a firearm. Simultaneously, two of the men behind the guard ropes produced automatic handguns, opening fire on the bouncers. Defendant placed his weapon to the head of bouncer Marcus Peterson. Although Jeffrey Craig, chief of security, managed to knock defendant's arm from Peterson's head before the gun could be discharged, he himself was shot in the thigh as he wrestled with defendant. The hail of bullets continued as the bouncers scurried for cover. When the shooting was over, and defendant and his associates had removed themselves from the scene, Marcus Peterson was discovered with a bullet wound in his chest, and he died a few hours later. Defendant was identified as one of the three gunmen in a subsequent lineup.

At the ensuing Grand Jury proceeding, there was testimony from Jeffrey Craig; John Fowler, one of the bouncers; Police

Officer Frank McLaughlin, who had arrived at the club after the shooting; and Detective Victoria Garcia, who had conducted the lineup in which defendant was viewed. Craig and Fowler both described the events surrounding the shooting. Officer McLaughlin stated that he had encountered Craig with a bullet wound in his thigh and had spoken with Peterson before his death. According to Detective Garcia, both Craig and Fowler identified defendant as the man who had originally fought with Fritz Vincent, had stormed the club entrance armed with a revolver and had attempted to shoot Marcus Peterson during the shooting melee.

The indictment charged defendant with murder in the second degree for the shooting death of Marcus Peterson (count one) and the attempted murder of Jeffrey Craig (count two), John Fowler (count three), Efren Cortes (count four), and Phillip Lespinasse (count five). In granting defendant's motion to dismiss the indictment on the ground of insufficiency to the extent of dismissing all of the counts against him except for the second, the Supreme Court stated that "[b]asically, there is a failure to show by the evidence the identity of the person who—the actual person who did the shooting in each of those counts or circumstances under which that shooting occurred." This was error.

The only issue involved herein is whether the evidence before the Grand Jury was legally sufficient pursuant to CPL 190.65 (1). In *People v Mikuszewski* (73 NY2d 407, 411), the Court of Appeals explained that: "A Grand Jury may indict only if the evidence before it is legally sufficient to establish that the accused committed the offense charged and also provides reasonable cause to believe the accused committed the offense (CPL 190.65). On a motion addressed to sufficiency of an indictment (CPL 210.20 [1] [b]), however, the defendant is entitled to a review based on whether there was competent evidence which, if accepted as true, would establish every element of an offense charged and the defendant's commission of it (CPL 70.10 [1]; *People v Jennings*, 69 NY2d 103, 115). The evidence must be viewed most favorably to the People, and it need not 'provide "reasonable cause" to believe that the defendant committed the crime charged' *(see, People v Warner-Lambert Co.,* 51 NY2d 295, 299, citing Denzer, Practice Commentary, McKinney's Cons Laws of NY, Book 11A, CPL 70.10, at 348 [1971]; *see also, People v Brewster,* 63 NY2d 419, 422)."

Thus, the People's burden at the Grand Jury is not the same as it is at trial. For a valid indictment, the only requirement is the establishment of a prima facie case in which "the

evidence viewed in the light most favorable to the People, if unexplained and uncontradicted, would warrant conviction by a petit jury" *(People v Jennings,* 69 NY2d 103, 114, *supra).* As noted in *People v Deegan* (69 NY2d 976, 979), "[t]hat other, innocent inferences could possibly be drawn from the facts is irrelevant on this pleading stage inquiry, as long as the Grand Jury could rationally have drawn the guilty inference". In the instant situation, the facts elicited at the Grand Jury were certainly more than adequate to show that defendant, who was indicted under a theory of accessorial liability, was not simply an innocent bystander but was the moving force behind the shooting death of Peterson and the related offenses. Defendant's verbal dispute with Fritz Vincent instigated what occurred afterward, and guns were not drawn by the other perpetrators until after defendant had produced his own weapon in endeavoring to break into the club. Further, after the heavyset man, who characterized himself as defendant's "brother", interceded on defendant's behalf and, in effect, led a walkout of their companions in protest of the perceived slight to defendant, the demand for a public apology to defendant followed. While it is not clear which individual shot which bullet, defendant's leading role and the shared community of purpose in the entire chain of events was amply demonstrated, relieving the prosecution of the need to show that defendant was the actual shooter of any particular person *(see, People v Whatley,* 69 NY2d 784; *People v Valdez,* 170 AD2d 190, *lv denied* 77 NY2d 1001, 78 NY2d 976; *People v Allah,* 129 AD2d 484, *affd* 71 NY2d 830). Consequently, the proof introduced before the Grand Jury was sufficient to support all of the counts of the indictment. Concur—Sullivan, J. P., Milonas, Kupferman, Ross and Smith, JJ.